UNITED STATES of America,
Plaintiff–Appellee,

v.

Luther Langford TAYLOR,
Defendant–Appellant.

No. 90–5913.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 2, 1993.

Decided May 7, 1993.

Joel Wyman Collins, Jr., Collins & Lacy, Columbia, S.C., argued, for defendant-appellant.

John Michael Barton, Asst. U.S. Atty., Columbia, S.C., argued (John S. Simmons, U.S. Atty., Scott N. Schools, Asst. U.S. Atty., on brief), for plaintiff-appellee.

Before WIDENER and NIEMEYER, Circuit Judges, and CHAPMAN, Senior Circuit Judge.

## OPINION

CHAPMAN, Senior Circuit Judge:

On May 29, 1992, we filed an opinion in this case, *United States v. Taylor,* 966 F.2d 830 (4th Cir.1992), reversing the defendant's conviction under the holding in *McCormick v. United States,* — U.S. ——, 111 S.Ct. 1807, 114 L.Ed.2d 307 (1991), because the jury instructions did not require proof of a *quid pro quo* in connection with the receipt of the alleged campaign contribution. In addition, we found that the jury instructions as to inducement were defective.

On May 26, 1992, *Evans v. United States,* — U.S. ——, 112 S.Ct. 1881, 119 L.Ed.2d 57 (1992), came down. In *Evans* the Court considered whether an affirmative act of inducement by a public official is an essential element of the offense of extortion "under color of official right" prohibited by the Hobbs Act. The Court decided that inducement by the office holder is not required. After considering *Evans,* the government requested a rehearing and the opportunity to argue that under *Evans,* Taylor's conviction should be sustained. We agreed to consider this single issue, and the parties were directed to brief and argue the application of *Evans* to Taylor's appeal. Now, having fully considered the supplemental briefs and the able oral arguments on this issue, we remain convinced that the jury instructions were defective and that Taylor's conviction must be reversed and the case remanded.

Luther Langford Taylor, Jr. was convicted of six counts of conspiracy to violate and violation of the Hobbs Act, 18 U.S.C. § 1951. The convictions resulted from monetary payments made to him, while he was a member of the South Carolina House of Representatives, by Ronald L. Cobb. At the time the payments were made, Cobb was acting as a paid confidential informant for the FBI, which was investigating corruption within the South Carolina General Assembly.

As part of the investigation the FBI created a scam operation that focused on a House Bill that would legalize parimutuel betting at race tracks in South Carolina. Cobb was provided an office in the AT & T Building across the street from the South Carolina State House and a suite at the Town House Hotel. Both the office and suite were under video and audio surveillance, and video tapes of Cobb making cash payments to Taylor were introduced into evidence. The prosecution charged, and the jury found, that receipt of these payments violated the Hobbs Act. Taylor contended, and still contends, that these payments were simply campaign contributions, which violated no state or federal law.

This prosecution is brought under the second part of the extortion definition contained in 18 U.S.C. § 1951:

> (a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,-000 or imprisoned not more than twenty years, or both.
>
> (b) As used in this section—
>
> *     *     *     *     *     *
>
> (2) The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or *under color of official right.*

18 U.S.C. § 1951 (1988) (emphasis added).

The issue is how to define "extortion under color of official right." This has proved difficult, and the Supreme Court is still developing an understandable definition. In *McCormick,* the Court held that when a public official accepts a campaign contribution, there must be a *quid pro quo* to support a Hobbs Act conviction.

In *Evans,* the Court considered the word "induced" which is included in the definition of "extortion" in § 1951(b)(2) and concluded that it did not apply to extortion "under color of official right." The Court stated:

> First, we think the word "induced" is a part of the definition of the offense by the private individual, but not the offense by the public official. In the case of the private individual, the victim's consent must be "induced by wrongful use of actual or threatened force, violence or fear." In the case of the public official, however, there is no such requirement. The statute merely requires of the public official that he obtain "property from another, with his consent, ... under color of official right." The use of the word "or" before "under color of official right" supports this reading.
>
> Second, even if the statute were parsed so that the word "induced" applied to the public officeholder, we do not believe the word "induced" necessarily indicates that the transaction must be *initiated* by the recipient of the bribe. Many of the cases applying the majority rule have concluded that the wrongful acceptance of a bribe establishes all the inducement that the statute requires. They conclude that the coercive element is provided by the public office itself. And even the two courts that have adopted an inducement requirement for extortion under color of official right do not require proof that the inducement took the form of a threat or demand.

— U.S. at ——, 112 S.Ct. at 1888 (emphasis in original) (footnotes and citations omitted).

Evans had argued that the jury instruction given in his case allowed him to be convicted on the basis of the passive acceptance of a contribution, that such instructions did not require the jury to find an element of duress such as a demand, and that said instructions did not describe the *quid pro quo* required by *McCormick* for a conviction if the jury found that the payment was a campaign contribution. The court rejected these arguments stating:

> We reject petitioner's criticism of the instruction, and conclude that it satisfies the *quid pro quo* requirement of *McCormick v. United States,* 500 U.S. ——, 111 S.Ct. 1807, 114 L.Ed.2d 307 (1991), because the offense is completed at the time when the

public official receives a payment in return for his agreement to perform specific official acts; fulfillment of the *quid pro quo* is not an element of the offense. We also reject petitioner's contention that an affirmative step is an element of the offense of extortion "under color of official right" and need be included in the instruction. As we explained above, our construction of the statute is informed by the common-law tradition from which the term of art was drawn and understood. We hold today that the Government need only show that a public official has obtained a payment to which he was not entitled, knowing that the payment was made in return for official acts.

—— U.S. at ——, 112 S.Ct. at 1889 (footnotes omitted).

In *McCormick*, the Court observed that campaign contributions are necessary and unavoidable in our present election system, which is financed by private contributions and expenditures, but concluded:

This is not to say that it is impossible for an elected official to commit extortion in the course of financing an election campaign. Political contributions are of course vulnerable if induced by the use of force, violence, or fear. The receipt of such contributions is also vulnerable under the Act as having been taken under color of official right, but only if the payments are made in return for an explicit promise or undertaking by the official to perform or not to perform an official act. In such situations the official asserts that his official conduct will be controlled by the terms of the promise or undertaking. This is the receipt of money by an elected official under color of official right within the meaning of the Hobbs Act.

—— U.S. ——, 111 S.Ct. at 1816.

*Evans* makes clear that the Hobbs Act applies to any payment to a public official to which the official is not entitled and which payment the government official knows is made in return for his official acts.

In the opinion filed May 29, 1992, we reversed Taylor's conviction because we found the jury instructions defective in that they would allow inducement to be established by any one of four acts—two of which were improper under *McCormick*. The jury returned a general verdict so it was impossible to determine if the verdict rested upon a sufficient rather than an insufficient ground. 966 F.2d at 834.

*Evans* has removed proof of inducement as an essential element of extortion "under color of official right," so it may be argued that the charge on inducement did not prejudice but worked to the appellant's benefit, because it placed a burden upon the prosecution to prove an unnecessary element. However, this does not cure the other problems with the jury instructions. In *Taylor I* we also found the jury instructions violated *McCormick* in another way:

The portion of the charge, "So long as the defendant knows that the money sought would be paid because of the public office involved, there need be no promise with respect to official action in return for the payment," (J.A., 992) would allow a Hobbs Act prosecution for almost all campaign contributions to incumbent office holders. This is in direct conflict with *McCormick*, which observed that from the beginning of the Republic, election campaigns have been financed by private contributions. Campaign contributions are made "because of the public office involved," because the person seeking the contribution is either an office-holder or seeking to become an officeholder.

The trial judge did charge the jury that there was no South Carolina law prohibiting cash contributions in any amount and that it was not illegal in and of itself for elected legislators to solicit and accept campaign contributions from individuals having a special interest in pending legislation. The trial judge charged: "If you find that the defendant accepted money from Ron Cobb reasonably believing that the money was a legitimate campaign contribution, you must acquit the defendant on all counts in the indictment." (J.A., 991–92). This statement does not cure the defects mentioned above, particularly the opportunity of the jury to base its conviction on one of the unacceptable alternate grounds provided by the instructions.

Under *McCormick*, it is clear that the payment must be made "in return for an explicit promise or undertaking by the official to perform or not to perform an official act." *McCormick*, —— U.S. at ——, 111 S.Ct. at 1816. This principle was not adequately set forth in the instructions given to the *Taylor* jury.

966 F.2d at 835.

It is clear from the jury instructions that Taylor could have been convicted because the jury found that the payments were made because of his public office and not because Taylor received a payment to which he was not entitled, knowing that the payment was made in return for his official acts.

Any payment to a public official, whether it be a legitimate campaign contribution or a bribe, is made because of the public office he holds. *Evans* makes clear that the public official must obtain "a payment to which he was not entitled, knowing that the payment was made in return for *official acts.*" *Evans*, —— U.S. at ——, 112 S.Ct. at 1889 (emphasis added).

Proof that the money was paid to a public official "because of his office" or was "motivated by the public. office involved" creates no standard and is not evidence of wrong doing, because such is a given for every payment or contribution to an elected public official. It is necessary for the prosecution to prove under the *Evans* standard "that a public official has obtained a payment to which he is not entitled, knowing that the payment was made in return for official acts." *Id.* Or, if the jury finds the payment to be a campaign contribution, then, under *McCormick*, it must find that "the payments are made in return for an explicit promise or undertaking by the official to perform or not to perform an official act." *McCormick*, —— U.S. at ——, 111 S.Ct. at 1816. At several places, the district court instructed the jury that it was the official office and not the official act that supported an extortion claim. The Court instructed:

In order to find the defendant guilty of an attempt to commit extortion under color of official right, you must be convinced beyond a reasonable doubt that at the time payments were made to the defendant he was aware that the payments were intended to influence his official *conduct* (emphasis added).

This instruction does not comply with either *McCormick* or *Evans*. All payments to elected officials are intended to influence their official conduct.

Later the court instructed:

If the public official knows the motivation of the victim focuses on the public official's *office*, and money is obtained by the public official which is not lawfully due or owing to him or to the office he represents, that is sufficient to satisfy the requirement of the law of extortion under color of official right (emphasis added).

It is enough that the payor transfer something of sufficient value to the public official that is not due the public official, with the expectation that the public official will extend to him some benefit or refrain from some harmful action, and that the public official accepts the thing of significant value knowing that it is being transferred to him because of his *office* (emphasis added).

There need be no specific *quid pro quo* to establish extortion under color of official right. That is, the government need not prove that the defendant promised to do something in particular in return for the payment of money. Of course, if you find that a *quid pro quo* did exist, that would be evidence of misuse of office. So long as a defendant knows that the money sought would be paid because of the *public office involved*, there need be no promise with respect to official action in return for the payment. In other words, the essence of the offense is the corrupt effort to obtain payment of the powers *public office* (sic) and not solely as a result of the powers of a private individual (emphasis added).

The above instructions would allow the jury to convict upon a finding that the payments were made to Taylor simply because he held office and this is not sufficient under either *McCormick* or *Evans*.

For the reasons stated above, the jury instructions do not pass muster under either *McCormick* or *Evans*. They would allow a Hobbs Act "under color of official right" con-

viction for payments made to a public official because of his office. This would cover almost all payments to officeholders. Also, the charge did not include the *McCormick quid pro quo* or the *Evans* "in return for official acts" language which are now necessary.

The judgments of conviction are reversed and this matter is remanded to the district court for further proceedings consistent with this opinion. *Taylor I* remains in effect and is merely supplemented by the present opinion.

REVERSED AND REMANDED WITH INSTRUCTIONS.